Good morning, Your Honor. Good morning. My name is Craig Welch of Welch & Ulrich, and I represent Mack Vogelei. That's how you pronounce the name. He is the defendant. Pull the mic a little closer to you. Imagine you're speaking to a group of 12th graders. Speak right up. I'm certainly not 12th graders, Your Honor. The question presented by this case is whether the bankruptcy court properly exercised federal question jurisdiction over a request to discharge in bankruptcy that a discharge be denied in bankruptcy as to a claim in bankruptcy under Section 523A of the Bankruptcy Code. On appeal, we contend that it did not and that it had no federal question jurisdiction over this matter. And the reason being that the party that requested that its claim be discharged was not the party who held the claim. And Section 523A is very specific on this point, and it grants the right to request that a discharge – that a claim be accepted from discharge only to the party who has the claim. In this case, the party that filed the action was a company, a corporation called Centennial Communications. We referred to it in the briefs as Centennial. And it was dissolved before the action was filed, and it was not the representative of the bankruptcy estate. And it was on that matter that the first appeal in this case went up on appeal to this Court, the Ninth Circuit, and this Court remanded the matter to the Bankruptcy Court to determine who had the capacity to sue. There was no hearing. There was no subsequent trial on remand. Declarations were submitted, and two days later the Bankruptcy Court changed the plaintiff in the judgment from Centennial Communications to Russell Vigil, the current plaintiff. This raised two issues. It raised the issue of jurisdiction, which was Federal question jurisdiction, as pointed out in the briefs under the Morongo Band of Indians case, is immediately brought into question. If the plaintiff who filed the action didn't hold the claim, then the case did not arise under the Federal statute that granted the claimant the right to have its claim decided. And it raises the second issue of due process, which is new evidence was taken on remand. The Court reopened the case. It took in new evidence, and it gave the defendant no opportunity to examine the witnesses. Now, I think that the first question, the question of jurisdiction, disposes of the case. There will be – and if there is no jurisdiction, then the Court has no choice but to dismiss the case. And in the Ninth Circuit decision, which is cited in the brief, the Morongo Band of Indians v. the State of California, there is an excellent recitation of the – of the arises under jurisdiction of this Federal question jurisdiction of this Court. And what that case stands for is the proposition that unless a well-pleaded complaint, you can find a basis for Federal question jurisdiction, you cannot cure that lack of jurisdiction by substituting a plaintiff in at a later date. And that is essentially what's happened here. The Court has substituted one plaintiff for another, thereby claiming they're creating what should be Federal question jurisdiction, which did not exist at the beginning of the case. Do you think that because of the prior decision of our Court that there's some law of the case that blessed this happening? I think I have three responses to that, Your Honor. I think there is law of the case here. And the law of the case, which was fairly clearly stated, which was in the original decision, which was that the only representative of the estate that was alluded to in the record at the time it went up on the field the first time was Centennial Communications, the dissolved corporation that was not the representative of the estate. The Ninth Circuit, the first panel, remanded saying that the correct plaintiff should be substituted into the case, nunc protunc. I think the first point to be made here is that regardless of what the Ninth Circuit panel ordered, it did not consider the question of jurisdiction. And I think that the decisions of this Court and of the Supreme Court are clear that if jurisdiction did not exist, then neither the district court nor the Ninth Circuit would have been dismissed. And that is the point that's made in the Morongo Band of Indians case, which is if there's no federal question of jurisdiction, then the Court has no authority and it can't do anything but dismiss the case. And that's what should have happened. The second question that was raised by the remand order. But what do we do with that? It sounds like our Court perhaps was wrong, but it didn't. Well, that would be my third point. And in the Sanborn case, which is the United States Supreme Court case that talks about what happens on remand, it talks about what the court on remand can and can't do, and it says, well, it has to follow the law of the case. But one of the exceptions to that is if the original panel made a mistake, you can reconsider what the panel did. And if it's clear that there was a mistake, then that really brings me to my second point, which was, well, was there clear error? I think that the first panel didn't consider the issue of jurisdiction. There's nothing in the decision about jurisdiction. The only thing it says is that the original plaintiff lacked capacity. And the focus on that appeal was on the corporate capacity of the plaintiff and, secondarily, on its representation as the representative of the estate. But no one had considered the fact that the court – that without a proper plaintiff, the court lacked jurisdiction. So I don't think that the first panel really decided of that. And that's the other issue in the Sanborn case, the United States Supreme Court case about remand. It says that this Court, this panel, has the right to interpret its own remand decision and what that means, and whether it included the issue of jurisdiction or it didn't. And I think if you read that decision, it's only two paragraphs long, you'll see that there's no mention of jurisdiction. And I think that's the problem here, is that this case started with a plaintiff who wasn't authorized to represent the estate. And we defended that on the lack of capacity, and we raised the issue of standing. No one considered the issue of jurisdiction on appeal. But once the court ordered the remand, the plaintiff came in with a declaration that says, oh, that's right. The people that started this case were not the authorized representatives of the estate. There was another gentleman named Michael Healy, who, by the way, is not mentioned anywhere in the original case, in the original trial, in the complaint, in the trial briefs. He's not mentioned. And he was the authorized representative of the estate. Hence, no Federal question of jurisdiction, because only the party that has the claim can invoke the jurisdiction of this Court, and the wrong party invoked the jurisdiction. If that – if the rule were otherwise, then there would be a significant problem with this Court having a multiplicity of litigation, both as to this defendant, which would – any party could sue this defendant on a non-dischargeability claim, on anybody else's claim. And secondly, the management of this Court would be extremely burdened by additional cases. So if you took a case like PG&E, the Pacific Gas and Electric case, if every party in the case was permitted to bring a dischargeability action on everybody else's claim, you would have thousands and thousands of claims filed in this Court. It would be unfair to the defendant, and it's also unfair to this Court to be clogged with that kind of litigation. And so there's a good public policy reason for this rule. And I think this Court should find that there was a lack of jurisdiction when this case commenced, and that the bankruptcy court and the district court had no choice but to dismiss the case, and the case ought to be dismissed. Any questions? Roberts. Okay. You've got some time left for rebuttal. If you choose to use it, thank you for your argument. We'll hear from the other side at this time. Jeffrey. Thank you. Tom Jeffrey, appearing for Russell Vigil. I'd like to take, if I could, just a minute or two to briefly hopefully give a little bit of perspective to this case. It has a very long history. As Your Honors are probably aware, it stems from a 1981 bankruptcy filed in Nebraska, which is still alive to this day. I think the record fairly supports the conclusion that that bankruptcy would have been concluded in the mid-to-late 80s, but for the actions of Mr. Vogeli in absconding with the estate's funds. So here we are, 24-some-odd years later, still trying to finalize a judgment against Mr. Vogeli, and the 24 years is largely attributable to him. I'd like to turn first to the issue of subject matter jurisdiction. In the prior Ninth Circuit appeal, if I heard counsel's arguments correctly, it sounded as though they were arguing that subject matter jurisdiction was never raised in the prior appeal. If I heard that correctly, that's definitely not the case. And Your Honors will see, in reading the briefs in the prior case, it definitely was raised. And I think implicit in the remand order by the Ninth Circuit Court of Appeals, they determined that there was jurisdiction, because if they did not, they would have had to dismiss it. Your client, V. Hill, is the third in a series of representatives appointed by the Bankruptcy Court. Exactly. When was the roughly was the first representative appointed? Was that at the onset of the case? Healy was appointed as representative in 1992. He filed the adversary proceeding in Nebraska court in 1993. There's no question that he was duly appointed. There's no question that a lady by the name of Mildred Glontang was then appointed as successor representative. There's no question that Russ V. Hill was appointed as successor representative, and he continues to this day. When the case was before the prior panel of this Court, there was a duly appointed representative in place? Yes. And that was Mr. V. Hill. He was, in fact, appointed as representative before the case went to trial in the Santa Rosa bankruptcy adversary proceeding. And if memory serves, he was appointed before the adversary proceeding was filed in the Santa Rosa court. There was always a duly appointed representative. And was he a party in the prior proceeding before the Ninth Circuit? He was not. He also was not a party in the Nebraska adversary proceeding. The Nebraska adversary proceeding against Vogelei was also brought in the name of Centennial, not in the name of the representative. And no objection was ever raised by Vogelei in that case. And, of course, there's a lot of case law that says that type of issue, lack of capacity, is waived if it's not timely raised. And then you add to the fact it wasn't raised in the prior case, and as the bankruptcy court found in Santa Rosa, that prior case is entitled to collateral estoppel res judicata effect in this case. Therefore, I think the court is bound. The issue has been waived. There's also, in terms of the subject matter jurisdiction, obviously what's happening here and what was raised primarily in the prior appeal was lack of capacity or that the real party in interest wasn't named as plaintiff. That issue wasn't directly raised in the briefs in this appeal. It was more of a vague statement that there isn't subject matter jurisdiction without really explaining why. The case law under Federal Rule of Civil Procedure 17 on lack of capacity makes it clear it is an issue that can be raised, number one. Number two, it is an issue that can be cured by a non-proton amendment as occurred here. And, in fact, the history behind that rule encourages amendments to be done retroactively to avoid any issue on statute of limitation or anything else. And that's precisely what happened here. The problem that the prior and I second panel, circuit panel addressed was that the representative of the State was not an identified party in the caption. Do I have that right? That's my understanding. And the purpose of the remand was to correct that. Exactly. And that's what the bankruptcy court did. Precisely. Well, what it says in the disposition, the State itself has no capacity, but rather it must rely on a trustee or other representative. Correct. And so the issue in my mind is a very narrow, very minute one, which is it's clear that the estate was appearing through authority by the bankruptcy court in Nebraska. The only issue is that the caption didn't correctly identify the representative as the plaintiff as opposed to the estate. That's the only issue. And I think it just defies common sense to say you could not retroactively amend the complaint to conform to that and that because it's done after the fact there was no subject matter jurisdiction. The nature of the claim, dischargeability in bankruptcy, clearly that's the type of claim bankruptcy courts have jurisdiction over. And also when you add to that the fact that it's clear the representative had authority, it is a very minute technical issue, which I think the Ninth Circuit previously addressed. I'd also like to address the due process argument. I think, and we've kind of touched on it, that the prior Ninth Circuit order essentially created a situation for the bankruptcy court in Santa Rosa that they had a ministerial act to carry out the terms of the remand order. The remand order doesn't, as I read it, doesn't give any discretion to the Santa Rosa. It says even, it uses the term, shall be done retroactively, or excuse me, non-protonque if necessary. Shall obviously being mandatory. I think it's also important to acknowledge that this due process issue raised by Bogolai to me is a very transparent one, consistent with his desires to stall, dodge, and otherwise avoid this judgment. He has no factual issue that can be addressed on this. I don't think in any respect does he dispute that Vigil is the duly appointed representative. It's nowhere in his brief that he disputes that. He could have if there truly were some factual issue. He could have filed a motion to set aside the judgment in the Santa Rosa bankruptcy court saying that it was surprise to him under Federal Rules Procedure 60. He didn't do that. He's never made an offer of proof that there's some type of factual issue there. It is, in my mind, a complete red herring. If he's given an opportunity to present evidence, he has no evidence to present and common sense says, well, what could the issue be? The issue is to find out who was the representative appointed by the court. Is Bogolai contending that the documents offered from the Nebraska bankruptcy court somehow aren't authentic? I don't know what the issue could possibly be. And I think also on the due process issue, the fact that the judgment initially was against Bogolai for $900,000-some-odd, both in the Nebraska court and in California. The fact that it is amended nunt pro tante to change a defect in the name of the plaintiff doesn't implicate any property or liberty interest. He's already been deprived of that by the previous judgments. So the fact that the plaintiff's name is changed in the complaint and the judgment in no way is any better or worse for Bogolai, therefore, I don't think there is any due process right. I'd be happy to address any questions the Court has. If not, I'd like to touch on a couple of quick points. Okay. One of the issues, excuse me, cases raised by Bogolai was the Morongo case. Morongo, fairly read, isn't close to this case. And in fact, none of the cases cited by appellate are close to this case. Morongo was an interpleader action. And the issue there was whether the court, in determining if there was Federal question jurisdiction, could look at possible defenses to be raised by the defendant, which could create Federal questions. Whether the court could consider that in deciding if there was jurisdiction. The Court said no. That has nothing to do with this case. The other two cases cited by appellant, Franchise Tax Board v. Construction Laborers, again, it was a very narrow issue where it was an attempt to remove the case from State court to Federal court by a labor union. The court looked at there's a provision in ERISA that allowed very specific identified individuals to file suit in Federal court. The labor union wasn't one of them. The court said, therefore, there's no jurisdiction. Again, it's not close to this case. The last case, U.S. XREL Texas Portland Cement v. McCord, that was a supplier attempting to enforce its rights on a public works project to be paid. It tried to file suit in Federal court saying that it was entitled to bring suit within a six-month period that the statute very expressly said was granted only to the United States. And the court said you can't do that. The statute very specifically says only the United States can file suit within the first six months. You, supplier, cannot. Therefore, there's no jurisdiction. None of those cases involve a retroactive or non-protunct amendment of the name of the plaintiff involving lack of capacity, real party and interest, or anything similar to it. There simply is no authority out there that says there is no subject matter jurisdiction when that occurs. In terms of the statute of limitations issue, which is raised in the briefs, hasn't really been raised today. I think that's a very simple issue. If the amendment is non-protunct, by definition, there's no statute of limitations issue. So, again, I'd be happy to address any questions the Court may have. Roberts. I don't see any. Counsel, thank you for your argument. Thank you. We'll hear a rebuttal at this time. A few points. Jurisdiction, subject matter jurisdiction can't be consented to or waived. In the Morongo Band of Indians case, and the reason that case is cited is not because it's factually similar, but because it states unequivocally that the Court itself can raise the issue of jurisdiction, subject matter jurisdiction, at the end of the case, because that's exactly what happened. In that case, neither party raised the issue of jurisdiction, and the Court raised it and said, oh, my God, there was never subject matter jurisdiction, the case has to be dismissed. On the issue of due process, what would have happened in the lower court if we had been given an opportunity to cross-examine the witness? Well, first of all, we would have gotten rid of the kind of misstatement of information that was just received by the Court, which was that Mr. Vigil was the representative of the estate when the complaint was filed. That's not true. The complaint was filed in 1999. Mr. Vigil wasn't appointed until 2001. I didn't hear counsel say that. But whatever the record is, it is. So the point that really needs to be highlighted here is that the declarations that were submitted in the Court were hearsay declarations. Mr. Pavel, the attorney in Nebraska, makes statements about what Mr. Healy did in California and says that Mr. Healy commenced this case. That's not what was set at trial. We had a trial. And the opening statements in the trial were to exclude witnesses. And I specifically asked the trial judge to exclude witnesses. I said to the trial judge, and it's in the record. You can see it. It says, who is the representative of the estate? And the trial counsel says the representative of the estate is here in its capacity through Centennial Communications, Inc., the reorganized data, or through Richard Osberg. Now, you haven't heard counsel say that Richard Osberg was the representative of the estate. And he was not, and he never has been. He was the president of the reorganized debtor, and the reorganized debtor was never the representative of the estate. It became a dissolved corporation. Rather, Mr. Healy, according to Mr. Pavel, was the representative of the estate, and he was never mentioned. He's not mentioned in the complaint. He's not in the trial. He didn't show up. He was never examined. We don't know anything about him. And that is why there's a lack of subject matter jurisdiction, because the party that held the claim when this action was filed was a guy named Mr. Healy, and he didn't elect to file it, and there's no evidence that he did, other than a hearsay statement entered after remand at a time when we weren't permitted to cross-examine him about whether or not Mr. Healy did or didn't do that. And, in fact, I submit that Mr. Pavel's declaration is hearsay and should not have been admitted by the bankruptcy court when it was submitted. And that's why there's a due process issue. But we don't get to the due process issue, because it's very clear from the record that there was a lack of subject matter jurisdiction. And that lack of jurisdiction can't be consented to by any of the parties, and it can't be waived. Roberts. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted, and we'll proceed to the next case on the calendar, which is another bankruptcy case involving the estate of Claude Cossu. And Jefferson Pilot Securities Corporation of Counsel will come forward, please.
judges: Lay , B. Fletcher, Hawkins